**No. 25-2335**

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

PAUL AHMANN,

*Plaintiff-Appellant*,

v.

WASHINGTON DEPARTMENT OF TRANSPORTATION, an
agency of the State of Washington, *et al*.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Eastern District of Washington
No. 2:23-cv-0140-TOR
Hon. Thomas O. Rice

_____

### APPELLANT'S OPENING BRIEF

_____

George M. Ahrend, WSBA #25160
Ahrend Law Firm PLLC
421 W. Riverside Ave., Ste. 1060
Spokane, WA 99201
(206) 467-6090

Garth L. Dano, WSBA #11226
Garth Dano Lawyer, P.S.
P.O. Box 2149
Moses Lake, WA 98837
(509) 770-4748

Eric S. Hanson, WSBA #47381
Bishop Law Office
P.O. Box 337
Garfield, WA 99130
(509) 635-1551

Co-Attorneys for Appellant

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...............................................................................iv

JURISDICTIONAL STATEMENT .....................................................................1

ISSUES PRESENTED FOR REVIEW ................................................................1

REVIEWABILITY AND STANDARD OF REVIEW ........................................1

STATEMENT OF THE CASE..............................................................................1

I.    Background Facts. ........................................................................................1

    A. Ahmann's Catholic Faith................................................................1

    B. Ahmann's Work History. ...............................................................2

    C. COVID-19 Pandemic And Vaccines..............................................3

    D. WSDOT Religious Accommodation Policies. ...........................4

    E. Ahmann Informs His Supervisor Of The Need For A Religious Accommodation. ..........................................................................6

    F. Ahmann Fills Out The Religious Accommodation Forms.. ......................6

    G. Ahmann's Religious Accommodation Request Is Denied........................8

II.    Procedural History .................................................................................10

ARGUMENT .......................................................................................................12

I.    The District Court Erred By Ruling As A Matter Of Law That Ahmann's Request For A Religious Accommodation Failed To Describe Adequately How His Religious Beliefs Prevented Him From Complying With The COVID-19 Vaccine Mandate. ...................................................................12

A. The District Court Erred By Requiring An Essentially Theological Justification Of Ahmann's Request For A Religious Accommodation From WSDOT's Vaccine Mandate. ........................................................13

B. The District Court Further Erred By Discounting Additional Notice Communicated By Ahmann To His Supervisors, In Compliance With WSDOT Policy...................................................................................17

CONCLUSION.............................................................................................20

CERTIFICATE OF COMPLIANCE.............................................................21

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ahmann v. Washington State Dep't of Transp.*, 2:23-CV-0140-TOR, 2025 WL 790631 (E.D. Wash. Mar. 12, 2025) ...........................11-12, 16-17

*Catholic Charities Bureau, Inc. v. Wisconsin Labor & Indus. Review Comm'n,* 605 U.S. —, 145 S. Ct. 1583 (2025) ..............................................13

*Heller v. EBB Auto Co.,* 8 F.3d 1433 (9th Cir. 1993) ..................13-14, 16-17

*Kaino v. Harney Cnty. Health Dist.*, 2:23-CV-00643-HL, 2024 WL 4298212 (D. Or. Sept. 26, 2024) ............................................................ 15-16

*Kidd v. Univ. Med. Ctr. of S. Nevada*, 2:22-CV-01990-ART-NJK, 2024 WL 4046249 (D. Nev. July 2, 2024) ............................................... 15-16

*Kimbro v. Atlantic Richfield Co.* 889 F. 2d (9th Cir. 1989) ..................... 17-18

*Kumar v. Gate Gourmet, Inc.*, 180 Wash. 2d 481, 325 P.3d 193 (2014)......12

*Medrano v. Kaiser Permanente*, No. 8:23-CV-02501-DOC-ADSX, 2024 WL 3383704 (C.D. Cal. July 10, 2024) .........................................11, 17

*Meritor Savings Bank v. Vinson,* 477 U.S. 57 (1986) ...................................17

*Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997)..............................................1

*Palmer v. Rancho Sahuarita Mgmt. Co. LLC*, CV-23-00566-TUC-AMM, 2024 WL 4241553 (D. Ariz. Sept. 19, 2024) ................................................15

*Patterson v. Legacy Health*, 3:23-CV-1298-AR, 2024 WL 5379013, (D. Or. Dec. 27, 2024), *report and recommendation adopted,* 3:23-CV-01298-AR, 2025 WL 392590 (D. Or. Feb. 4, 2025).......................14

*Siino v. Foresters Life Ins. & Annuity Co.*, 133 F.4th 936 (9th Cir. 2025) .....................................................................................................1

iv

*Taylor v. Phoenixville School Dist.* 184 F.3d 296 (3rd Cir.1999)........... 17-18

*Tiano v. Dillard Dep't Stores*, 139 F.3d 679 (9th Cir. 1998).........................12

*Welch v. Oregon Health & Sci. Univ.*, 3:23-CV-01231-SB, 2024 WL 3106930 (D. Or. May 17, 2024), *report and recommendation adopted,* 3:23-CV-01231-SB, 2024 WL 3106838 (D. Or. June 20, 2024) ..................16

*Zwink v. Burlington Northern, Inc.* 13 Wn. App. 560, 536 P.2d 13 (1975)......................................................................................................17

## Statutes, Rules & Regulations

28 U.S.C. § 1291......................................................................................1

Rev. Code Wash. ch. 49.60 ........................................................................10

Title VII, 42 U.S.C. § 2000e, *et seq*. ...........................................................10

## JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

Did the District Court err in dismissing Ahmann's Title VII and WLAD claims on summary judgment?

## REVIEWABILITY AND STANDARD OF REVIEW

The District Court's summary judgment orders are subject to de novo review. *Siino v. Foresters Life Ins. & Annuity Co.*, 133 F.4th 936, 943 (9th Cir. 2025). The evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to Ahmann, as the nonmoving party. *Id.* The orders must be reversed, unless there are no genuine issues of material fact and the defendants are entitled to judgment as a matter of law. *Id.* On de novo review, the Court may even enter summary judgment in Ahmann's favor. *Neal v. Shimoda*, 131 F.3d 818, 831 & n.16 (9th Cir. 1997).

## STATEMENT OF THE CASE

### I. Background Facts.

#### A. Ahmann's Catholic Faith.

Paul Ahmann is a practicing Catholic. ER 216 (ECF 44-2 at 2.) He was raised in a large Catholic family, and has been practicing his Catholic faith for over 30 years. ER 216-17 (*Id.* at 2-3); ER 213 (ECF 44-3 at 5, ¶ 4.) Ahmann's co-workers

knew him to be a practicing Catholic. ER 208 (ECF 44-4 at 7.) During the work week, Ahmann would take time off to attend Mass during Holy Days of Obligation. *Id*. Ahmann's Catholic faith informs him that life begins at conception; abortion is murder, and he cannot take a vaccine that utilizes the cells of aborted children. ER 201 (ECF 44-5 at 7:10-19.)

### B. Ahmann's Work History.

In 1998, Ahmann was hired by the Washington State Department of Transportation (WSDOT) as an Equipment Tech. ER 197 (*Id.* at 3:14-21.) In 2007, Ahmann was promoted to Lead Equipment Tech. ER 198 (*Id*. at 4:3-9.) Ahmann worked in the Colfax Maintenance Shed with two other mechanics, Travis Anderson and Phil Newton. ER 204 (ECF 44-4 at 3, ¶ 1.) The Colfax Maintenance Shed is a well-ventilated 120 by 60 foot area with four bays approximately 30 by 60 feet wide. (*Id.* at ¶ 2.) As a Lead Equipment Tech, Ahmann's level of supervision was not considered to be direct/close supervision over his two co-workers; but rather "general direction," meaning that Ahmann assigned tasks to the other technicians and checked their work. ER 227 (ECF 43-1 at 2); ER 47 (ECF 60 at 2, ¶ 2.) As such, Ahmann and his two co-workers worked independently of each other. ER 204 (ECF 44-4 at 3 ¶ 4); ER 47 (ECF 60 at 2, ¶ 2.) Projects that required two people took place maybe once a week and lasted about 15 minutes. ER 204-05 (ECF 44-4 at 3.) Ahmann's essential job functions did not require him to have in-person contact with

2

the public or be in close proximity to others. ER 228 (ECF 43-1 at 3); ER 47 (ECF 60 at 2, ¶ 3) Ahmann's essential job functions include "the ability to work independently and unassisted" and "the ability to work night shifts." *Id*.

### C.     COVID-19 Pandemic And Vaccines.

When the COVID-19 Pandemic occurred, many things changed with Ahmann's work environment. ER 205 (ECF 44-4 at 4, ¶ 1.) All the required training and necessary communications were accomplished remotely by computer or phone. *Id*. For the most part, customers, vendors, and contractors, as well as supervisors and other employees stopped coming in to the Maintenance Shed. *Id*. There was, however, an incident where a vaccinated Maintenance Supervisor, who had been exposed to COVID-19 virus by his wife, was not properly wearing his mask and came to the Maintenance Shed. The exposed-but-vaccinated supervisor approached Ahmann's co-worker, Phil Newton, and wiped his hands on Newton, while telling Newton that he needed to get vaccinated. ER 42-43 (ECF 69-1 at 4-5.) WSDOT determined that this interaction did not constitute "close personal contact" under WSDOT's COVID-19 protocols because Mr. Newton and the Maintenance Supervisor were within 6-feet of each other for less than 15 minutes. ER 43-44 (*Id*. at 5-6.)

On August 3, 2021, the General Counsel for Washington State Governor Jay Inslee, Kathryn Leathers, sent an e-mail to the state Attorney General's Office (AG)

3

stating that the Governor's Office was moving in the direction of mandatory COVID-19 vaccination. ER 194 (ECF 44-7 at 2.) The e-mail also noted that religious exemptions would be granted sparingly. *Id.* ("if we have to, if yes, as narrow as possible"). On August 20, 2021, Governor Inslee subsequently issued Proclamation 21-14-1 COVID-19 vaccination requirement (Proclamation). ER 178 (ECF 44-8 at 2.) The Proclamation required state workers to be vaccinated by October 18, 2021, or they would be fired. ER 182 (*Id.* at 6.)

**D.      WSDOT Religious Accommodation Policies.**

To determine religious (and medical) accommodations for its employees, WSDOT utilized its Human Resource Desk manual, Chapter 25, (Desk Manual). ER 59-60 (ECF 44-23 at 6, 7 ¶ 1); ER 65 (ECF 44-23 at 12, ¶ 3.) Chapter 25 provides, in part:

> An employee may submit a request for a reasonable accommodation orally… to their supervisor or another supervisor or manager in the immediate chain of command…it is then forwarded to HR to begin the interactive process.

ER 133 (ECF 44-14 at 16, ¶ A.)

Chapter 25 also sets forth the role of the WSDOT's supervisor/managers, stating:

> [T]he supervisor/manager is a conduit for communication with the employee and is responsible for keeping HR and the chain of command informed."

ER 132 (ECF 44-14 at 15, ¶ 25-4.5.) The Supervisor is further required to:

> Immediately consult with HRC (Human Resource Consultant) if they become aware of an employee with a possible need for accommodation.

ER 133 (ECF 44-14 at 16, ¶ D.)

Although WSDOT already had the foregoing accommodation policy in place to administer religious and medical accommodations, with regard to the vaccine mandate, WSDOT collaborated with the Attorney General's office in preparing a different process for employees who sought religious and medical accommodations. ER 153 (ECF 44-10 at 2, ¶ 1.)

On August 20, 2021, Jeff Pelton, WSDOT's Human Resource (HR) Director sent out an e-mail to all WSDOT employees, stating in part that, before providing an accommodation for sincerely held religious beliefs, employees would have to provide WSDOT with the completed exemption forms. (*Id.* at ¶ 4.) WSDOT Secretary Roger Millar appointed a 12-person committee (the Committee) to review religious and medical exemption requests from the COVID-19 vaccine mandate. ER 157-58 (ECF 44-9 at 3:24-4:6.) The Committee was chaired by Amy Fermo, WSDOT's Assistant HR Director. ER 173-74 (*Id*. at 19:22-20:5.) Unlike WSDOT's HR Manual Chapter 25, where the supervisor, employee, and HR department work together to begin the interactive process, the Committee reviewed the exemption forms and determined whether or not a religious exemption request stated a religious belief that conflicted with the vaccine requirement. ER 149-50 (ECF 44-11 at 3-4.)

5

**E.      Ahmann Informs His Supervisor Of The Need For A Religious Accommodation.**

Before filling out a religious accommodation request form, Ahmann informed his direct supervisor, Mike Steinmetz, that he intended to seek a religious exemption from the COVID-19 vaccines because they utilized products of abortion in the research and development process. ER 206 (ECF 44-4 at 5, ¶ 1.) Ahmann told Steinmetz that he would take the Novavax vaccine because Ahmann believed it did not utilize such products of abortion in the research and development process. *Id.* Steinmetz told Ahmann that "Ahmann was right" and encouraged Ahmann to apply for a religious exemption. *Id.*

**F.      Ahmann Fills Out The Religious Accommodation Forms.**

On August 24, 2021, Ahmann executed a form titled "Religious Exemption Request Form, Proclamation 21-14 (vaccine requirement)." ER 117 (ECF 44-15 at 2.) The Form asked whether Ahmann had "a sincerely held religious belief or religious conviction that prevented him from receiving the COVID-19 vaccine." *Id.* Ahmann answered "Yes" to that question. *Id.* The Form then asked if he could affirm that he had never received a vaccine or medicine from a healthcare provider as an adult. *Id.* Ahmann answered "No" to that question. *Id.*

On August 25, 2021, Ahmann received an e-mail from Bobbi Collins-Whitehead, WSDOT's HR Director for Eastern Washington, stating that WSDOT needed additional information about Ahmann's religious beliefs. ER 115 (ECF 44-

6

16 at 2.) She provided Ahmann with another form to fill out and submit titled "Religious Exemption Request Form-Additional Question Proclamation 21-14 (vaccine requirement)." ER 112 (ECF 44-17 at 2.) In response to the question about how the vaccine mandate conflicted with his religious beliefs, Ahmann wrote:

> I will not have the blood of any baby on my hands. Any vaccine that was brought about by the use of baby parts in the research and development process or using them in the ingredients will not be used on me without my knowledge. It is an evil and selfish process which devalues human life and puts a monetary value on babies.

*Id.* Ahmann further stated that he would take the Novavax vaccine because it was a "clean vaccine." ER 113 (*Id* at 3.)

When the Committee reviewed Ahmann's completed religious exemption request, it never looked at Ahmann's personnel file, asked questions about his background, or spoke to Ahmann about his religious beliefs. ER 159-60 (ECF 44-9 at 6:2-7:9.) According to Amy Fermo, the Committee "had no reason to question Ahmann's credibility" about the religious exemption claim he filed, or "doubt his sincerity" that he had a religious objection to the vaccine. ER 161-62 (*Id*. at 7:10-8:24.)

If the Committee determined that the request stated a religious belief, it would consider whether the individual employee could be accommodated. *Id*. According to Amy Fermo, employees requesting a religious exemption were not required to state the religion to which they adhere on the exemption forms, but only how their

7

sincerely held religious beliefs prevented them from being vaccinated. ER 175 (*Id.* 44-9 at 21:3-7.)

In the meantime, around September 2, 2021, Washington Governor Inslee, WSDOT's Secretary Roger Millar and other State Officials received a letter from Richard Mast of Liberty Counsel. ER 96-104 (ECF 44-18 at 5-13.) The letter was written on behalf of state workers who were subject to the vaccine mandate. ER 93-94 (ECF 44-9 at 2-3.) The letter explained, in part, that the available COVID-19 vaccines were either produced by, derived from, manufactured with, tested on, or developed with or otherwise connected to aborted fetal cell lines. ER 98 (ECF 44-18 at 7, ¶ 1.) The letter also explained that not all vaccines are developed, tested, or produced using aborted cell lines, and most people only hold religious beliefs against accepting those vaccines derived from aborted fetal cell lines used in testing, development, or manufacturing. (*Id* at ¶ 4.)

## G. Ahmann's Religious Accommodation Request Is Denied.

On September 14, 2021, Ahmann received an e-mail from Jeff Pelton stating that Ahmann's accommodation request was denied. ER 90-91 (ECF 44-19 at 2-3.) Specifically, the e-mail stated:

> **After engaging in the interactive process, WSDOT HR did not receive sufficient information from you to enable a determination as whether your request for a religious exemption is based on a sincerely held religious belief, practice or observance that prevents you from being vaccinated from COVID-19. Therefore, your religious exemption request cannot be approved.**

*Id.* (emphasis in original). The e-mail advised Ahmann that he would have to be vaccinated or else his employment would be terminated. (*Id* at ¶ 3.) The e-mail further advised Ahmann that WSDOT would engage in the interactive process to provide Ahmann with a temporary accommodation if he became fully vaccinated. (*Id* at ¶ 4.)

After Ahmann's religious exemption was denied, Brian Feitkau, Ahmann's Superintendent from Spokane, visited the Colfax Maintenance Shed. ER 206 (ECF 44-4 at 5, ¶ 2.) Feitkau said to Ahmann, "off the record, why are you not getting the COVID-19 vaccine?" ER 207 (*Id.* at 6, ¶ 2.) Ahmann responded, in part, that he couldn't receive the available vaccines because they utilized abortion in the research and development and doing so would "piss off God." *Id.* Feitkau responded "nobody is questioning the sincerity of your religious beliefs, but if you don't get the vaccine you'll be fired." *Id.* Feitkau stated that he didn't want to lose Ahmann as an employee and it would make his job much easier if Ahmann would just get the vaccination. *Id.*

On September 27, 2021, Ahmann received a pre-termination notice e-mail from WSDOT official Amy Scarton. ER 86-88 (ECF 44-20.) This e-mail stated in part that WSDOT intended to terminate Ahmann's employment unless he provided proof that he is or would be fully vaccinated by October 18, 2021. ER 87 (*Id.* at 3, ¶ 4.) On October 5, 2021, Ahmann received another e-mail, this one from WSDOT's

9

Secretary Roger Millar, confirming that his employment would be terminated on October 18, 2021. ER 83 (ECF 44-21 at 2, ¶ 5.)

On October 18, 2021, Ahmann was terminated. He filed a charge of employment discrimination with the EEOC. ER 69-71 (ECF 44-22 at 2-4.) WSDOT's Representative Christian Afful, in response, wrote to the EEOC and said, in part, "WSDOT identified and offered an option for accommodating [Mr. Ahmann] inability to be vaccinated for religious reasons but Ahmann "declined to pursue that option." ER 65 (ECF 44-23 at 12, ¶ 3.) This was not true. WSDOT Assistant HR Director Amy Fermo later testified that WSDOT never considered accommodating his [Mr. Ahmann's] and never evaluated Ahmann's position to see if it would be an undue hardship for WSDOT to accommodate Ahmann. ER 168-72 (ECF 44-9 at 14:20-15:4); ER 35 (ECF 69-2 at 13.)

## II.     Procedural History.

Ahmann brought failure to accommodate claims against WSDOT under Title VII, 42 U.S.C. § 2000e, *et seq.*, and the Washington Law Against Discrimination (WLAD), Rev. Code Wash. ch. 49.60, and the parties filed cross motions for summary judgment. The District Court granted WSDOT's motion for summary judgment and dismissed Ahmann's complaint. While the court concluded that Ahmann held a bona fide religious belief that prohibited him from receiving a vaccine made with aborted fetal cell lines, the court ruled as a matter of law "that

10

the record in this case does not indicate Plaintiff adequately gave notice to WSDOT of how his sincerely held religious beliefs conflicted with the COVID-19 vaccine." *Ahmann v. Washington State Dep't of Transp.*, 2:23-CV-0140-TOR, 2025 WL 790631, at *4 (E.D. Wash. Mar. 12, 2025). Specifically, the court ruled that Ahmann "failed to properly explain how his religious beliefs prevented him from receiving the COVID-19 vaccine" because:

> on the Religious Exemption Request Form, Plaintiff marked "yes" that he was asserting he had a sincerely held religious belief or conviction that prevented him from receiving the vaccine. However, his objection that he "will not have the blood of any baby" on his hands and the "use of baby parts in the research and development process" is "an evil selfish process, which devalues human life and puts a monetary value on Babies" is not a sufficient explanation of why this directly conflicts with his religious values. "[D]istrict courts within the Ninth Circuit have generally found that objections to the vaccine on the grounds that it was developed using aborted fetal cell lines are sufficiently articulated bona fide religious beliefs, as long as they are tied to a specific religious tenet." *Medrano v. Kaiser Permanente*, No. 8:23-CV-02501-DOC-ADSX, 2024 WL 3383704, at *5 (C.D. Cal. July 10, 2024) (collecting cases). Plaintiff makes no mention of what sincere religious belief he holds that forms the basis for his objections. The only potential religious reference he uses is the district word "evil" which is insufficient.

*Id.* The court further ruled that Ahmann's "conversations with [supervisors] Steimentz and Fietkau did not impute the knowledge of Plaintiff's religious conflict with the COVID-19 vaccine to WSDOT," even though such notice otherwise satisfied WSDOT's religious accommodation policy. (*Id.* at *6.) Given this ruling

11

the court did not address WSDOT's admitted failure to accommodate Ahmann's religious beliefs.

## ARGUMENT

I.  **The District Court Erred By Ruling As A Matter Of Law That Ahmann's Request For A Religious Accommodation Failed To Describe Adequately How His Religious Beliefs Prevented Him From Complying With The COVID-19 Vaccine Mandate.**

To establish a prima facie case of religious discrimination based on a failure to accommodate under Title VII, an employee must prove "(1) [he] had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) [he] informed [his] employer of the belief and conflict; and (3) the employer threatened [him] or subjected [him] to discriminatory treatment, including discharge, because of [his] inability to fulfill the job requirements." *Tiano v. Dillard Dep't Stores*, 139 F.3d 679, 681 (9th Cir. 1998). For purposes of this appeal, a prima facie case under the WLAD is substantially similar. *See Kumar v. Gate Gourmet, Inc.*, 180 Wash. 2d 481, 325 P.3d 193 (2014).

In this case, the District Court correctly ruled that Ahmann satisfied the first element of his prima facie case because his bona fide religious beliefs conflicted with his employer's vaccine mandate. *Ahmann,* 2025 WL 790631, at *3-4. In addition, there is no dispute that Ahmann has satisfied the third element of his prima facie case because he was terminated when he could not comply with the vaccine mandate.

12

However, the District Court erred in ruling as a matter of law that Ahmann could not satisfy the second element of his prima facie case, requiring notice of the need for a religious accommodation. The court improperly ignored both the substance and context of Ahmann's communications with his employer, and required an essentially theological justification regarding the conflict between his beliefs about the sanctity of life, the use of vaccines derived from aborted fetal tissue, and his need for an accommodation from his employer's vaccine mandate. This conflicts with well-established circuit precedent regarding the adequacy of notice of the need for a religious accommodation. *See Heller v. EBB Auto Co.,* 8 F.3d 1433 (9th Cir. 1993). It also runs afoul of guidance from the Supreme Court, both recent and unanimous, prohibiting courts from second-guessing a religious actor's self-understanding of what constitutes a religious purpose justifying a request for accommodation in a different, but nonetheless relevant context. *See Catholic Charities Bureau, Inc. v. Wisconsin Labor & Indus. Review Comm'n,* 605 U.S. —, 145 S. Ct. 1583 (2025).

## A. The District Court Erred By Requiring An Essentially Theological Justification Of Ahmann's Request For A Religious Accommodation From WSDOT's Vaccine Mandate.

This Court has held that "[a] sensible approach would require only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and

13

the employer's job requirements." *Heller*, 8 F.3d at 1439. "Any greater notice requirement would permit an employer to delve into the religious practices of an employee in order to determine whether religion mandates the employee's adherence." *Id.* Courts may not engage in such inquiry, and "neither should employers." *Id.* Ahmann's request for a religious accommodation from WSDOT's vaccine mandate satisfies this standard. Indeed, his initial request for a religious accommodation because the available COVID-19 vaccines satisfied this standard without further elaboration. ER 117 (ECF 44-15 at 2.) His subsequent response to WSDOT's additional questions elaborated on the basis for his religious objection, which is grounded in the sanctity of life and the "evil" use of the products of abortion. ER 112 (ECF 44-17 at 2.) He was not further required to elaborate on the prohibition against material cooperation with evil in his Catholic tradition in order to be entitled to an accommodation. WSDOT had more than enough information to know Ahmann's religious beliefs conflicted with the COVID-19 vaccine mandate.

Cases following *Heller* have determined that facts comparable to those present in this case are sufficient to support a claim that an employee adequately informed his or her employer of the need for a religious accommodation from vaccine mandates. *Patterson v. Legacy Health*, 3:23-CV-1298-AR, 2024 WL 5379013, at *5 (D. Or. Dec. 27, 2024), *report and recommendation adopted,* 3:23-CV-01298-AR, 2025 WL 392590 (D. Or. Feb. 4, 2025) (employee's submission of

14

"COVID-19 Injection Religious Exemption Form" and attached letter stating that "receiving the COVID-19 injection goes against my sincerely held religious beliefs" held sufficient); *Kaino v. Harney Cnty. Health Dist.*, 2:23-CV-00643-HL, 2024 WL 4298212, at *4 (D. Or. Sept. 26, 2024) (employee's request for religious accommodation on grounds that her "faith lies in God as her healer," that God has blessed her with natural immunity," and that "to receive the vaccine would be a lack of faith and accepting the immoral practice used in it's [sic] development" held sufficient); *Palmer v. Rancho Sahuarita Mgmt. Co. LLC*, CV-23-00566-TUC-AMM, 2024 WL 4241553, at *2 & 4 (D. Ariz. Sept. 19, 2024) (employee's request for religious accommodation on grounds of "deeply held religious belief that children (minors under 18) should honor their parents," and employee's parents had directed that he not get the vaccine).

For example, in *Kidd v. Univ. Med. Ctr. of S. Nevada*, 2:22-CV-01990-ART-NJK, 2024 WL 4046249, at *1 (D. Nev. July 2, 2024), the court held that an employee's request for accommodation on grounds that her "Pagan beliefs ... preclude her from taking the COVID-19 vaccination" was sufficient. The District Court tried to distinguish *Kidd* on grounds that the employee in that case used the word "Pagan" in her request for an accommodation, whereas Ahmann merely checked the box on WSDOT's form stating that he has "a sincerely held religious belief … that prevents [him] from receiving the COVID-19 vaccine," ER 117 (ECF

15

44-15 at 2), and answer the question that receiving the vaccine "conflicts with [his] strongly held religious beliefs" based on the sanctity of life, the evil of abortion, and the use of aborted fetal tissue in the development of the vaccine, ER 112 (ECF 44-17 at 2.) The court's distinction is meritless because the request in *Kidd* and Ahmann's request both communicated the existence of a conflict between the employee's religious practices and the employer's job requirements, as required by *Heller*, 8 F.3d at 1439. If anything, Ahmann's communicated more information.

Requests like Ahmann's for accommodation based on "Christian-based beliefs in the sanctity of life and opposition to taking a vaccine connected to, or derived even remotely from, aborted fetal cell lines" are sufficient. *Welch v. Oregon Health & Sci. Univ.*, 3:23-CV-01231-SB, 2024 WL 3106930, at *14 (D. Or. May 17, 2024), *report and recommendation adopted,* 3:23-CV-01231-SB, 2024 WL 3106838 (D. Or. June 20, 2024) (collecting citations); *see also Kaino,* 2024 WL 4298212, at *4 (request for religious accommodation based in part because "to receive the vaccine would be … accepting the immoral practice used in it's [sic] development").

The District Court recognized that "[d]istrict courts within the Ninth Circuit have generally found that objections to the vaccine on the grounds that it was developed using aborted fetal cell lines are sufficiently articulated bona fide religious beliefs, as long as they are tied to a specific religious tenet." *Ahmann*, 2025

16

WL 790631, at *4 (quoting *Medrano v. Kaiser Permanente*, No. 8:23-CV-02501-DOC-ADSX, 2024 WL 3383704, at *5 (C.D. Cal. July 10, 2024)). Where the court erred, however, is in discounting Ahmann's opposition to the "evil" of abortion as well as his related opposition to use of vaccines derived from aborted fetal tissue in the context of a request for a religious accommodation as a religious tenet. This Court should at a minimum reverse, but it would be more appropriate to hold that this was sufficient under *Heller* to inform WSDOT of the conflict between Ahmann's religious beliefs and WSDOT's vaccine mandate.

**B.      The District Court Further Erred By Discounting Additional Notice Communicated By Ahmann To His Supervisors, In Compliance With WSDOT Policy.**

When determining employer liability under Title VII, The U.S. Supreme Court has determined Courts should look to agency principles for guidance. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 52, (1986). Such principles are fully applicable in the employment context. *Zwink v. Burlington Northern, Inc.* 13 Wn. App. 560, 566, 536 P.2d 13, 17(1975). For example, this Court in *Kimbro v. Atlantic Richfield Co.* 889 F. 2d, 869, 875 (9th Cir. 1989) found that a supervisor's knowledge of employee's medical condition was imputed to employer because the employer's policies required employees to raise all personnel-related matters with supervisor. *See also Taylor v. Phoenixville School Dist.* 184 F.3d 296, 314 (3rd Cir.1999) (finding that a school employee's son requesting an accommodation from

17

employee's supervisor triggered employer's duty to engage in the interactive process.)

Similar to *Kimbro,* Ahmann's WSDOT's policies require supervisors to notify HR of religious or medical accommodation requests, or if they become aware of an employee with a potential need for accommodation. ER 133 (ECF 44-14 at 16, ¶ A.); ER 133 (ECF 44-14 at 16, ¶ D.) WSDOT's policies, specifically its HR Desk Manual Chapter 25, states that an employee may submit a request for a reasonable accommodation orally to their supervisor; the supervisor is to forward the request to HR; the supervisor is the "conduit for communication" with the employee and is responsible for keeping HR informed; and is required to "immediately consult with HR if they become aware of an employee with a possible need for accommodation. ER 133 (ECF 44-14 at 16, ¶ A.); ER 132 (ECF 44-14 at 15, ¶ 25-4.5); ER 133 (ECF 44-14 at 16, ¶ D.) According to Christian Afful's letter to EEOC, the standards set forth in WSDOT's HR Desk Manual Chapter 25 applies to both religious and medical accommodation requests. ER 59-60 (ECF 44-23 at 6-7, ¶ 1); ER 65 (ECF 44-23 at 12, ¶ 3.)

Here, Ahmann informed his Supervisor, Mike Steimentz and his Superintendent Brian Feitkau of his religious objections to taking the COVID-19 vaccine. Ahmann told Steimentz that he was seeking a religious exemption from the COVID-19 vaccines because they utilized aborted fetal cells in their research and

development. ER 206 (ECF 44-4 at 5, ¶ 1.) Ahmann also told Steimentz that he would be willing to take the Novavax COVID-19 vaccine because he understood that it did not utilize aborted fetal cells in its research and development process. *Id*. Steimentz told Ahmann he "was right" and encouraged him to seek a religious exemption. *Id*.

After Ahmann's religious exemption request was denied, his Superintendent, Brian Feitkau visited the Maintenance shed to talk to Ahmann. ER 206 (ECF 44-4 at 5, ¶ 2.) Feitkau said to Ahmann "off the record, why are you not getting the COVID-19 vaccine?" ER 207 (*Id.* at ¶ 2.) Ahmann responded that the COVID-19 vaccines utilized aborted fetal cells in their research and development process and taking any such vaccine would "piss off God." *Id*. Feitkau then told Ahmann that "nobody was questioning the sincerity of his religious beliefs" but if he didn't get the vaccine he would be fired. *Id*. When Ahmann informed his direct Supervisor, Mike Steimentz, and his Superintendent Brian Feitkau of his religious objections, to the COVID-19 vaccine, their knowledge was imputed to WSDOT, given Chapter 25's requirement for supervisors to act as a conduct of information to HR and immediately consult with and inform HR of a potential accommodation. The District Court's decision held Chapter 25 process is adjusted for accommodation in the disability context. However, WSDOT's letter to the EEOC clearly stated Chapter 25 applied to both religious and medical accommodation requests. As such, the policy

19

is applicable to Ahmann's request and his supervisor's knowledge is imputed to WSDOT.

## CONCLUSION

This Court should reverse the decision of the District Court and remand for trial.

Date: June 20, 2025

AHREND LAW FIRM PLLC

*/s/ George M. Ahrend*
George M. Ahrend

*Co-Attorney for Appellant*

20

**Certificate of Compliance for Briefs**

**9th Cir. Case Number 25-2335**

I am the attorney or self-represented party.

**This brief contains 4,590 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/George M. Ahrend       **Date** June 20, 2025

21