No. 25-2335

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

PAUL AHMANN,

*Plaintiff-Appellant*,

v.

WASHINGTON DEPARTMENT OF TRANSPORTATION, an
agency of the State of Washington, *et al*.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Eastern District of Washington
No. 2:23-cv-0140-TOR
Hon. Thomas O. Rice

APPELLANT'S REPLY BRIEF

George M. Ahrend, WSBA #25160
Ahrend Law Firm PLLC
818 W. Riverside Ave., Ste. 450
Spokane, WA 99201
(509) 350-4421

Garth L. Dano, WSBA #11226
Garth Dano Lawyer, P.S.
P.O. Box 2149
Moses Lake, WA 98837
(509) 770-4748

Eric S. Hanson, WSBA #47381
Bishop Law Office
P.O. Box 337
Garfield, WA 99130
(509) 635-1551

Co-Attorneys for Appellant

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ iii

REPLY ..............................................................................................................1

I.    WSDOT continues to ignore the text and context of Ahmann's request for a religious accommodation to the Covid vaccine........................................1

II.    WSDOT improperly attempts to blame Ahmann for not mentioning that he was Catholic, even though WSDOT never asked him to identify the tradition from which his religious beliefs derived. ....................................3

III.    WSDOT improperly seeks an essentially theological justification regarding how employees' religious beliefs require an accommodation. ..............................................................................................4

IV.    WSDOT improperly tries to backtrack on the concession regarding the sincerety of Ahmann's religious beliefs.....................................................5

V.    WSDOT misstates the record regarding Ahmann's conversations with his supervisors. .......................................................................................6

VI.    This Court should not entertain WSDOT's affirmative defense based on alleged undue hardship since it has not been addressed by the district court, but the defense is meritless in any event. ...................................................7

CERTIFICATE OF COMPLIANCE...................................................................10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Burns v. Southern Pac. Transp. Co.*, 589 F.2d 403 (9th Cir. 1978)................8

*Catholic Charities Bureau v. Wisconsin Lab. & Indus. Rev. Comm'n*, 605 U.S. 238 (2025)..................................................................................................5

*Draper v. United States Pipe & Foundry,* 527 F.2d 515 (6th Cir. 1975)........8

*EEOC v. Arlington Transit Mix, Inc.* 957 F.2d 219, 222 (6th Cir. 1991) ... 8-9

*EEOC v. Texas Hydraulics,* 583 F. Supp. 2d 904 (E.D. Tenn. 2008).............8

*Golden Gate Hotel Ass'n v. City and County of San Francisco*, 18 F.3d 1482 (9th Cir. 1994) .............................................................................................7

*Groff v. DeJoy*, 600 U.S. 447 (2023)...............................................................8

*Heller v. EBB Auto Co.*, 8 F.3d 1433 (9th Cir. 1993) .................................. 3-5

*Kidd v. University Medical Center*, 2024 WL 4046249 (D. Nev., July 2, 2024) .........................................................................................................3

*Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931 (7th Cir. 2003) .............5

*Scamihorn v. Gen. Truck Drivers*, 282 F.3d 1078 (9th Cir. 2002)............... 6-7

*Singleton v. Wulff*, 428 U.S. 106, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976) ................................................................................................................ 7

*Welch v. Oregon Health & Science Univ.*, 2024 WL 3106930 (D. Or., May 17, 2024) ...................................................................................................... 3-4

**REPLY**

**I.     WSDOT continues to ignore the text and context of Ahmann's request for a religious accommodation to the Covid vaccine.**

WSDOT repeatedly claims that Ahmann's request for an accommodation "never mentioned religion or explained how [his] objection stemmed from a religious tenet or belief." Appellee's Answering Brief ("WSDOT Br.") at 1; *accord id.* at 13 ("Ahmann's exemption forms …. did not reference religion or tie Ahmann's opposition to any religion or religious belief or tenet"); *id.* at 21 ("Ahmann's exemption request forms … never mentioned any religious belief or objection"). These claims are simply not an accurate portrayal of the record, nor do they respect the standard of review for summary judgment.

Ahmann filled out a "RELIGIOUS EXEMPTION REQUEST FORM." ER 117. The form was circulated by WSDOT for the express purpose of requesting religious accommodation, and stated "WSDOT will provide reasonable accommodations to qualified applicants and employees with religious beliefs/practices[.]" *Id.* Ahmann filled out the form to indicate that he had a religious belief that prevents him from receiving the available Covid vaccine:

> 1. You assert that you have a sincerely held religious belief or religious conviction that prevents you from receiving the COVID-19 vaccine.
>    X    Yes _____ No

*Id.*

1

The form further stated, "In some circumstances, WSDOT will need to obtain additional follow-up information about your strongly held religious beliefs" and "will reach out to [the employee] if additional information is needed to process this request. ER 117. The WSDOT HR Director for Eastern Washington, Bobbi Whitehead, subsequently reached out to Ahmann. ER 115. She sent an email acknowledging his "response to the religious exemption request" and requesting "additional information about your strongly held religious belief(s)[.]" *Id.*

HR Director Whitehead attached to her email a file named "WSDOT_Religious_Accommodation_Request_-_COVID_-_AQ.pdf." ER 117. The file was a form entitled "RELIGIOUS EXEMPTION REQUEST FORM – ADDITIONAL QUESTIONS." ER 112. The form asked Ahmann to explain how the Covid vaccine conflicts with his strongly held religious beliefs:

> 1. Please explain how a COVID-19 vaccine conflicts with your asserted strongly held religious beliefs. Please attach additional pages if needed to document the full response.
>
> I will not have the blood of any baby on my hands. Any vaccine that was brought about by the use of baby parts in the research and development process or by using them in the ingredients will not be used on me with my knowledge. It is an evil selfish process, which devalues human life and puts a monetary value on Babies.

*Id.* Given the text and context of Ahmann's express request for a religious accommodation, WSDOT was fully aware of the religious nature of his request.

2

**II.    WSDOT improperly attempts to blame Ahmann for not mentioning that he was Catholic, even though WSDOT never asked him to identify the tradition from which his religious beliefs derived.**

WSDOT argues that Ahmann's request for a religious accommodation was insufficient because he did not specifically mention that Catholicism was the source of his religious beliefs. *E.g.,* WSDOT Br. at 13 ("Ahmann's exemption forms … did not reference religion"); *id.* at 20 ("Ahmann 'made no mention of his religion'"). In addition, WSDOT also tries to distinguish analogous case law on grounds that Ahmann did not specifically reference his Catholicism in his requests for a religious accommodation.

> unlike the plaintiffs in, Ahmann did not tie his opposition to abortion to Christian beliefs or make any reference to religion when he requested an accommodation.

WSDOT Br. at 19 (distinguishing *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1439 (9th Cir. 1993), on grounds that the employee requesting an accommodation "expressly [told] his employer that he was Jewish and needed time off to attend a Jewish ceremony"); *id.* at 20 (distinguishing *Kidd v. University Medical Center*, 2024 WL 4046249 at *5 (D. Nev., July 2, 2024), as "inapposite" because the employee submitted an accommodation request "stating that she was Pagan and … her Pagan religion conflicted with [the employer's] vaccination policy); 21 (distinguishing *Welch v. Oregon Health & Science Univ.*, 2024 WL 3106930 at *13 (D. Or., May 17, 2024), on grounds that the employees "referenced Christianity, Catholicism,

3

scripture, and/or the Bible in their requests" for a religious accommodation). However, none of the relevant case law hinges upon the mention of a specific religious tradition.

This argument is particularly disingenuous because none of the religious accommodation forms asked Ahmann to identify the tradition from which his religious beliefs derived. ER 112, 117. In addition, WSDOT Assistant HR Director Amy Fermo admitted that employees requesting a religious exemption were not required to state the religion to which they adhere on the exemption forms. ER 175. This admission was pointed out in Ahmann's opening brief and it has been ignored by WSDOT. Ahmann Br. at 8-9 (citing ER 175). Of course, if he had been asked to identify his religious tradition, Ahmann would have been willing to do so, as he shared that he was Catholic with his coworkers. ER 208.

## III. WSDOT improperly seeks an essentially theological justification regarding *how* employees' religious beliefs require an accommodation.

WSDOT does not dispute this Court's direction in *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1439 (9th Cir. 1993), to "require only enough information about an employee's religious needs to permit the employer to understand the *existence* of a conflict between the employee's religious practices and the employer's job requirements." (Emphasis added.) Any further inquiry is prohibited. *Id.* Nonetheless, WSDOT insists on going beyond inquiring about the *existence* of a religious conflict and repeatedly complains that Ahmann did not explain *how* his religious beliefs

related to Covid vaccines and the use of aborted fetal tissue in the development of such vaccines. *E.g.,* WSDOT Br. at 1, 10-11, 17, 18.[1] This type of inquiry is foreclosed by *Heller* and cannot serve as a basis for denying any accommodation.[2]

## IV. WSDOT improperly tries to backtrack on the concession regarding the sincerity of Ahmann's religious beliefs.

WSDOT asks this Court to reverse the district court's decision that Ahmann's religious beliefs are sincere. WSDOT Br. at 33-35. However, WSDOT Assistant HR Director Amy Fermo conceded that WSDOT "had no reason to question Ahmann's credibility" or "doubt his sincerity" regarding his religious objection to the Covid vaccines. ER 161-62.

---

[1] WSDOT quotes *Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 934 (7th Cir. 2003), where the Seventh Circuit observed that "[i]t is difficult to see how an employer can be charged with discrimination on the basis of an employee's religion when he doesn't know the employee's religion (or lack thereof[.]" WSDOT Br. at 15, 21. However, the employee in *Reed* "refused to indicate what if any religious affiliation or beliefs (or nonbeliefs) he has." *Id.* at 933. This is unlike Ahmann, who identified his religious beliefs against receiving vaccines developed with aborted fetal tissue.

[2] This Court's decision in *Heller* is reinforced by the recent U.S. Supreme Court decision in *Catholic Charities Bureau v. Wisconsin Lab. & Indus. Rev. Comm'n*, 605 U.S. 238 (2025), which struck down a state law that characterized a religious organization's mission and activities as secular, contrary to the organization's own self-understanding of its mission and activities. In a different but analogous way, WSDOT is attempting to characterize Ahmann's beliefs contrary to his own self-understanding of those beliefs as religious. *Catholic Charities* was cited in Ahmann's opening brief, but it has been ignored by WSDOT.

5

**V.    WSDOT misstates the record regarding Ahmann's conversations with his supervisors.**

In his opening brief, Ahmann pointed out that any alleged deficiency in his requests for a religious accommodation was remedied by communications with his supervisors, which complied with WSDOT's human resources policies. Ahmann Br. at 17-20. In response, WSDOT argues that the "only evidence" of these communications is Ahmann's summary judgment declaration. WSDOT Br. at 22. This is incorrect, as WSDOT overlooks the declaration of Ahmann's coworker, Travis Anderson. ER 206-08 [ECF 44-4 at pp. 5:1-7:13]. There is no basis to ignore Anderson's testimony regarding the Ahmann's communications with his supervisors.

WSDOT further argues that Ahmann's declaration should be disregarded because he did not testify regarding the communications described therein during his deposition. However, as explained in Ahmann's declaration, he did not remember the communications until after he spoke with Anderson. ER 217-18 [ECF 44-2 at pp. 3:14-4:18]. There is no contradiction or basis to ignore Ahmann's testimony regarding the communications with Ahmann's supervisors. *Scamihorn v. Gen. Truck Drivers*, 282 F.3d 1078, 1086 n.7 (9th Cir. 2002) (summary judgment affidavit is not a "sham" due to lack of memory when there is corroborating evidence).

6

**VI.** **This Court should not entertain WSDOT's affirmative defense based on alleged undue hardship since it has not been addressed by the district court, but the defense is meritless in any event.**

WSDOT urges this Court to affirm on grounds of its undue hardship defense, even though it has not been addressed by the district court. WSDOT Br. at 27-33. Generally, "a federal appellate court does not consider an issue not passed upon below." *Golden Gate Hotel Ass'n v. City and County of San Francisco*, 18 F.3d 1482, 1487 (9th Cir. 1994) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976)). The issue should be decided by the district court in the first instance.

WSDOT's claim of undue hardship is belied by its response to the EEOC, where it stated that "WSDOT identified and offered an option for accommodating [Ahmann's] inability to be vaccinated for religious reasons." ER 65. This was pointed out in Ahmann's opening brief, and it has been ignored by WSDOT, which now argues to the contrary that no accommodation is possible without undue hardship.

WSDOT cannot satisfy its burden to prove undue hardship, let alone as a matter of law on summary judgment review. The analysis of undue hardship is a "fact-specific inquiry" that considers whether "a burden is substantial in the overall context of an employer's business," and takes into account all relevant factors … including the particular accommodations at issue and their practical impact in light

7

of the nature, size and operating cost of an employer." *Groff v. DeJoy*, 600 U.S. 447, 468 & 470-71 (2023).

Once an employee has established a prima facie case of religious discrimination, the burden shifts to the employer to show that it could not reasonably accommodate the employee without an undue hardship. *EEOC v. Arlington Transit Mix, Inc.* 957 F.2d 219, 222 (6th Cir. 1991). "The employer is required to take some steps in negotiating with the employee to reach a reasonable accommodation to the particular religious beliefs at issue." *Burns v. Southern Pac. Transp. Co.*, 589 F.2d 403, 406 (9th Cir. 1978). "To meet its burden on summary judgment, an employer must demonstrate that it at least considered possible options that would have accommodated an employee." *EEOC v. Texas Hydraulics,* 583 F. Supp. 2d 904, 910 (E.D. Tenn. 2008). Courts are properly skeptical of "hypothetical hardships that an employer thinks might be caused by an accommodation that never has been put into practice. *Draper v. United States Pipe & Foundry,* 527 F.2d 515, 520 (6th Cir. 1975). "The employer is on stronger ground when he has attempted various methods of accommodation and can point to hardships that actually resulted. *Id*. When an employer fails to pursue any reasonable accommodation, it is in no position to argue that it was unable to reasonably accommodate without an undue hardship. *Arlington Transit*, 957 F.2d at 222.

8

Here, WSDOT cannot satisfy its burden to prove undue hardship because Ahmann's job description did not require him to work with others, and accommodating his religious beliefs posed no significant risk. ER 47-48 [ECF 60 at pp. 2-3, ¶¶ 2-7]; ER 203-04 [ECF 44-4 at pp. 2:7-3:18]; FER 3-30 [ECF 46-2].

Dated: November 10, 2025

AHREND LAW FIRM PLLC

*/s/ George M. Ahrend*
George M. Ahrend

*Co-Attorney for Appellant*

**Certificate of Compliance for Briefs**

**9th Cir. Case Number 25-2335**

I am the attorney or self-represented party.

**This brief contains 1,840 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/George M. Ahrend      **Date** November 10, 2025